**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BETH CALDWELL PHOTOGRAPHY, LLC,** | * | |
| | * | |
| **Plaintiff,** | * | **Civil No. 1:25-04018-JRR** |
| **v.** | * | |
| **FLORISTS' REVIEW MEDIA GROUP, LLC,** | * | |
| **Defendant.** | * | |

* * *

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses Plaintiff Beth Caldwell Photography, LLC's ("Plaintiff's") Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). *See* ECF 10. On April 14, 2026, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Rubin referred Plaintiff's Motion to me for the report and recommendation on the Motion. I reviewed the relevant filings and conducted an evidentiary hearing. *See* ECF 13. For the reasons stated herein, the undersigned recommends GRANTING Plaintiff's Motion. As explained below, I recommend entering judgment against Defendant Florists' Review Media Group, LLC, in the amount of $30,000 in statutory damages and $9,215.50 in attorney's fees.

## I. FACTUAL BACKGROUND

Plaintiff Beth Caldwell Photography, LLC, owned by Elizabeth Caldwell, is a Maryland-based company that provides photography and photo editing services. Complaint, ECF 1 ("Compl."), at ¶ 1. Defendant, Florists' Review Media Group, LLC ("Florists' Review") is a Florida-based company that "publishes editorial and

photographic content for retail and wholesale florists, manufacturers, growers, and distributors" on a national and international scale. *Id.* at ¶¶ 3, 4. Defendant Julie Gibson ("Ms. Gibson"), also a Florida resident, is the president and creative director of Florists' Review. *Id.* at ¶ 5.

The relationship between Plaintiff and Defendants began in 2023, when Ms. Caldwell and Kelly Shore, the owner of nonparty Petals by the Shore, pitched a story to Ms. Gibson for feature in Florists' Review's July 2023 issue. Defendant accepted and compensated Plaintiff with $150 for the story and photoshoot. *Id.* at ¶ 8; *see also* ECF 1-9. Before publication, Plaintiff sent Defendants a gallery of the proofs as well as a licensing agreement memorializing the terms of Defendants' use of its photographs. Compl., at ¶ 9. Defendants did not respond. Nevertheless, in July 2023, Defendants published its monthly issue, using 15 photographs from Plaintiff's shoot; these photos appeared throughout the issue and were not limited to accompanying the specific story for which the photographs were designated. The unauthorized uses included a photograph used as the magazine's cover image and as a design element in the background for advertisements. Plaintiff pleaded—and Ms. Caldwell testified—that had Ms. Caldwell known of the extensive usage planned for her photographs, Plaintiff would have charged more, as is custom, for the cover story, and perhaps have not agreed to her image being used as a background to advertisements. Plaintiff contacted Defendants via email concerning the unauthorized use and attempted to negotiate new payment and licensing terms. *See* ECF 1-9. The attempt failed when Defendant refused to pay any additional sum for the photographs. *Id.* Rather than continue the battle, Plaintiff acquiesced and accepted the original $150 in compensation and sent Defendants an email that confirmed the acceptance and specified the terms of use for the photographs. *Id.* at

4; ECF 1-8 (licensing agreement noting that "any dispute will be subject to arbitration under the rules of the state of Maryland"). There is no allegation or evidence that the Defendants responded to that last email.

From 2023 to July 2025, Plaintiff had no contact with Defendants. However, in July 2025, Defendants "tagged" Plaintiff in an Instagram post[1] promoting Florists' Review's July 2025 issue, which featured one of Plaintiff's photographs as the cover image. Not having consented to the use of her photograph, Plaintiff took a screen capture of the Instagram post, searched the internet for any other unauthorized uses of the photo, and purchased a physical copy of the July 2025 issue. In total, Plaintiff discovered six of its images on Defendants' social media accounts and five photographs in the magazine's print issue.[2] These photos were not authorized for such use and, notably, were not a product of the 2023 photo shoot; they were taken at a later time for a different client. In total, Plaintiff alleges that Defendants infringed on three of its copyrights seventeen times. ECF 10 at ¶¶ 7, 8; *see also* ECF 10-2 (Plaintiff's relevant copyright registrations).

---

[1] "[A]s Instagram indicates, when a user tags another person in a post, 'the person you tagged will get a notification.'" *Color Image Apparel, Inc. v. Jaeschke*, No. 2:21-cv-7187-SVW-MAR, 2022 WL 2643476, at *4 n.6 (C.D. Cal. June 7, 2022) (citation omitted); *see also Denison Powerlifting Inc. v. Dorsey*, No. 8:23-cv-00744-JVS-KES, 2025 WL 1011784, at *1 n.2 (C.D. Cal. Mar. 3, 2025) ("'Tagging,' in the social media context refers to the act of virtually referencing an individual in a manner that can alert a user to a post or reel that they are 'tagged' in, and allows other users to identify the tagged individual by their username or 'handle.'").

[2] During the hearing, Ms. Caldwell noted that in the magazine, she was only credited for one photograph, albeit incorrectly. The "credited" photograph is found on page 4 of the print issue. ECF 1-10, at 3. The photograph is credited to "Beth Caldwell" rather than "Beth Caldwell Photography," as Plaintiff normally credits her professional work (including in the July 2023 Florists' Review issue).

With the 2023 interaction in mind, rather than contact Defendants directly, because of their 2023 interaction, Plaintiff hired an attorney to send Defendants a cease-and-desist letter in July 2025. ECF 1-11. The letter demanded "immediate and full compensation for the harm caused by the publication of unauthorized images" totaling $25,000. *Id.* On August 22, 2025, Ms. Gibson, through counsel, replied to the demand and denied any awareness that the "images for publication in the July 2025 issue of *Florists' Review* did not possess the proper rights to their publication." ECF 10-5, at 1. According to the August 22 response, Ms. Gibson did not make any connection to the 2023 interaction and denied any intentional infringement. *Id.* The letter advised that Defendants "took immediate corrective action in good faith" and removed the July 2025 publication and all images from social media. *Id.* Ms. Caldwell testified that despite this representation, at least one of the unauthorized photos remained on Defendants' social media accounts until mid-December 2025, after the initiation of this lawsuit. *See* Compl. ¶ 27 (alleging that a July 16, 2025 Facebook post, which included an unauthorized use of a copyrighted photo, remained active at the time the complaint was filed).

## II. PROCEDURAL HISTORY

On December 8, 2025, Plaintiff filed this case against Defendants Florists' Review and Ms. Gibson. *See* Compl. The Complaint alleges one count of copyright infringement, in violation of 17 U.S.C. § 501, and one count of unjust enrichment. *Id.* at 6-8. Service on Defendants occurred on December 12, 2025. ECF 6. On January 16, 2026, Plaintiff notified the Court that Defendant Julie Gibson filed for bankruptcy on January 5, 2026 in the United States Bankruptcy Court for the Middle District of Florida, Case No. 26-00050. ECF 5. Plaintiff sought default against Florists' Review on February 10, 2026. ECF 7. The Clerk of Court entered default the same day and instructed Florists' Review

to respond within thirty days. ECF 9. Florists' Review did not respond or otherwise submit any filings in this case.

On March 23, 2026, Plaintiff moved for default judgment against Florists' Review. ECF 10. Judge Rubin referred this matter to me on April 14, 2026. ECF 11. On July 16, 2026, the Court held an evidentiary hearing regarding the damages sought by Plaintiff. ECF 13; *see* Fed. R. Civ. P. 55(b)(2), Loc. R. 105.6 (D. Md. 2025). At the hearing, Ms. Caldwell testified to the allegations and provided additional information, including what has been noted above. With respect to her demand for relief, Plaintiff expressed her desire to seek statutory damages and attorney's fees.

## III. LEGAL STANDARD

Courts may enter default against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). Once default is entered, and the claim is not for a sum certain or ascertainable through computation, the moving party "must apply to the court for a default judgment." *Id.* at 55(b)(2). The Fourth Circuit has a "strong policy" that "cases be decided on their merits[.]" *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). However, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In reviewing a motion for default judgment, as to establishing liability, courts accept as true the well-pleaded factual allegations in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *Entrepreneur Media, Inc. v. JMD Entm't Grp.*, 958 F. Supp. 2d 588, 594 (D. Md. 2013); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a

responsive pleading is required and the allegation is not denied."); *see generally Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 740 (D. Md. 2023) ("In the Fourth Circuit, district courts analyzing default judgments have applied the standard of plausibility pleading articulated by . . . *Ashcroft v. Iqbal*, 556 U.S. 662 . . . (2009)[] and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 . . . (2007)[] to determine whether allegations within the complaint are well-pleaded.") (internal quotation marks and citation omitted). Courts must then determine whether the well-pleaded factual allegations in the complaint constitute a legitimate cause of action and "support the relief sought[.]" *Ryan*, 253 F.3d at 780-81.

In ascertaining damages, courts must make an independent determination. *See* Fed. R. Civ. P. 8(b)(6); *Lawbaugh*, 359 F. Supp. 2d at 422 ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). The moving party must provide sufficient factual and legal support for its request for damages and, if appropriate, attorney's fees. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (noting that, except where the amount of damages is certain, courts addressing default judgments shall make an independent determination of damages and may rely on detailed affidavits or documentary evidence to determine the appropriate sum). If necessary, courts may hold a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) ("Court[s] may only award damages without a hearing if the record supports the damages requested."). However, courts must limit their award of damages to those amounts and kinds requested

by a plaintiff. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

## IV. JURISDICTION, VENUE, AND SERVICE OF PROCESS

Before entering a default judgment, the Court must have subject matter jurisdiction over the case, personal jurisdiction over the defaulting party,[3] and venue must be proper. *See, e.g.*, *Banilla Games, Inc. v. Hines*, No. 2:22cv212, 2022 WL 17085953, at *2 (E.D. Va. Oct. 31, 2022). Here, subject matter jurisdiction exists because the case arises under the federal Copyright Act, and supplemental jurisdiction extends the Court's power to Plaintiff's unjust enrichment claim under state law because is related to the federal copyright infringement claim. 28 U.S.C. §§ 1331, 1338, 1367.

The Court may exercise personal jurisdiction over a nonresident defendant where "(1) the long-arm statute of the forum state authorizes jurisdiction; and (2) the assertion of jurisdiction comports with Fourteenth Amendment due process requirements." *Shider v. Bridgeport Music, Inc.*, No. 13-00527-AW, 2013 WL 5487868, at *3 (D. Md. Sept. 30, 2013) (citing *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)). Maryland's long-arm statute authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. Md. Code Ann., CTS. & JUD. PROC. § 6-103; *ALS Scan, Inc. v. Digital Serv.*

---

[3] The Fourth Circuit has not addressed whether courts must consider personal jurisdiction before entering a default judgment. *See Aerotek, Inc. v. Bernard Irby Inc.*, 670 F. Supp. 3d 230, 232 (D. Md. 2023). But because "any judgment entered against a defendant over whom the court does not have personal jurisdiction is void," *Koehler v. Dodwell*, 152 F.3d 304, 306-07 (4th Cir. 1998), this Court has found it "'prudent to determine, prior to entry of a default judgment,' whether it can exercise personal jurisdiction over a defendant." *Aerotek*, 670 F. Supp. 3d at 232 (quoting *Gonzalez v. Spunk Indus., Inc.*, No. 18-2935-ELH, 2019 WL 4392951, at *3 (D. Md. Sept. 13, 2019)).

*Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). Thus, courts must interpret it "to the limits permitted by the Due Process Clause when [they] can do so consistently with the canons of statutory construction." *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 765 (D. Md. 2009) (citation omitted) (alteration in original). The Due Process Clause permits personal jurisdiction over a defendant in any State where the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations and quotation marks omitted). Further, a court may exercise either general or specific personal jurisdiction over a defendant. *Shider*, 2013 WL 5487868, at *3 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). General jurisdiction arises where the defendant's contacts with the forum are "continuous and systematic[,]" whereas specific jurisdiction exists in the absence of continuous and systematic contacts if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Helicopteros Nacionales*, 466 U.S. at 416, and then quoting *Hanson v. Denckla*, 357 U.S. 235, 254 (1958)). To determine whether specific jurisdiction exists, the Fourth Circuit employs a three-prong test, considering "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan*, 293 F.3d at 712).

The plaintiff bears the burden of demonstrating personal jurisdiction, but the weight of the burden "varies according to the posture of a case and the evidence that has

been presented to the court." *Grayson v. Anderson*, 816 F.3d 262, 267-68 (4th Cir. 2016). The Court applies a preponderance of the evidence standard. *See id.* at 268. As noted above, in analyzing default judgments, courts consider whether the allegations within the complaint are well-pleaded and accept such factual allegations as true.

Defendant Florists' Review, despite it being domiciled in Florida, had specific dealings with Plaintiff in connection with the claims and allegations in this case, including electing to do business with a Maryland-based entity and using the materials of the same entity without authorization. Compl. at ¶¶ 4, 7; *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (personal jurisdiction may be satisfied by specific jurisdiction "based on conduct connected to the suit"). Plaintiff has long been a resident of this District, including in 2023 when it first interacted with Defendant Florists' Review. *See* ECF 1-9, at 3 (emails between Plaintiff and Defendants where Plaintiff's email signature lists its place of business as Damascus, Maryland). Despite denying infringement in its 2025 correspondence with Plaintiff, Florists' Review credited Ms. Caldwell, a Maryland resident, in one of the photos at issue in its July 2025 issue. Connecting these two facts, the court is satisfied that Plaintiff has made a prima facie showing of purposeful availment on Defendant's part. As to the second and third prong, Plaintiff alleges that Defendant regularly conducts business in this District and that damage has been felt by Plaintiff who resides in this District. Compl., at ¶ 7. Accepting the well-pleaded allegations as true and considering the testimony provided by Ms. Caldwell, the Court finds that Plaintiff has demonstrated that the Court has personal jurisdiction necessary to impose default judgment against Defendant Florists' Review. *See Roadget Business Pte. Ltd. v. Guangzhoulinghaofushi Co., Ltd.*, No. 24-1088 (CMH/WMF), 2025 WL 1843117, *2 (E.D. Va. May 6, 2025) (on a motion for default

judgment, taking adequately pled allegations of commerce with Virginia residents as true and viewing those allegations in conjunction with other facts identified by plaintiff during a hearing to conclude that the court maintained personal jurisdiction over an out-of-state defendant).

Having found subject matter and personal jurisdiction, the Court turns to venue. Venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). Here, the alleged copyrighted material was distributed in Maryland and the associated copyrighted material, which constitutes property that is the subject of the action, is situated in Maryland. Further, venue in federal copyright actions is proper "in any district where the defendant 'may be found.'" *Meissner*, 604 F. Supp. 2d at 770 (quoting 28 U.S.C. § 1400(a)). "The term 'may be found' in 1400(a) is interpreted to mean any district which may assert personal jurisdiction over a defendant." *Id.* As discussed above, the Court has personal jurisdiction over the Defendant. Therefore, Plaintiff has made a prima facie showing that venue is proper in this District pursuant to Section 1391(b) as well as Section 1400(a).

The Court is also satisfied that proper service occurred. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (noting that before exercising personal jurisdiction, a court must find procedural service requirements satisfied). An individual "may be served in a judicial district of the United States by . . . delivering a copy of the summons and of the complaint to the individual personally [or] to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). A private process server served Defendant Florists' Review on December 12, 2025. ECF 6. Service

being proper under the Federal Rules, the Court may exercise personal jurisdiction over Defendant Florists' Review.

## V. ANALYSIS

Plaintiff alleges that Defendant infringed on its copyrights when it published the copyrighted images, without Plaintiff's permission, in its July 2025 issue and accompanying social media posts. To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "[T]he certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

Plaintiff provided the Court with copies of her copyright certificates for the pictures in question. ECF 1-5. The date of registration is August 29, 2025, within the grace period provided by statute. *Id*; *see also* 17 U.S.C. § 412. She further supports her claim that they were copied without her permission through her affidavit (ECF 10-1) and testimony, as well as providing the Court with a copy of the July 2025 issue and a table that identifies all instances of the unauthorized use of her photographs (ECF 10-4, at 36-37). Because the Court takes the well-pleaded allegations in the complaint as true upon entry of default, Plaintiff has established Defendant's liability for copyright infringement by default. *See Ryan*, 253 F.3d at 780. The additional testimony and exhibits, even if not necessary in light of the well-pleaded allegations, reinforce the existence of liability. Thus, the Court finds that Plaintiff has proven copyright infringement by default and is entitled to her requested statutory damages and attorney's fees.

These conclusions, explained in greater detail below, rely on the unanswered

allegations as well as Plaintiff's testimony under oath at the evidentiary hearing. As a general matter, the Court found Ms. Caldwell's testimony credible. She did not testify inconsistent with her allegations or the documentary evidence. In response to the Court's inquiries, she clarified her answers in what the Court found to be a credible manner, acknowledging what was provable and what was, at least from her perspective, causally related to her claims; she did not use the uncontested nature of the hearing to make incredible leaps and test the limits of unsupportable inferences. For those reasons, unless otherwise noted, the Court credits her testimony in making the findings below.

### *A. The Undersigned recommends GRANTING Plaintiff's request for $30,000 in statutory damages under 17 U.S.C. § 504(c)(2).*

Plaintiff seeks statutory damages of $10,000 per infringement, for a total of $30,000. ECF 10, at ¶ 33. Under the Copyright Act, the plaintiff may elect before final judgment to recover statutory damages instead of actual damages and a defendant's profits. 17 U.S.C. § 504(c)(1). Statutory damages may be "in a sum of not less than $750 or more than $30,000 as the court considers just." *Id.*; *see also Malibu Media, LLC v. Redacted*, No. DKC 15-0750, 2016 WL 3668034, at *2 (D. Md. July 11, 2016). The Court enjoys wide discretion to set the amount of damages.[4] *F.W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 231-32 (1952). In exercising this discretion, a district court considers several factors including: "(1) the expenses saved and the profits earned by the defendant in connection with infringement, (2) revenues lost to the plaintiff, (3) the

---

[4] If requested by the plaintiff and upon a showing that the infringer "either had actual knowledge that it was infringing the owner's copyrights or acted in reckless disregard of those rights[,]" the court may also award enhanced damages. 17 U.S.C. § 504(c)(2); *see also Malibu Media, LLC*, 2016 WL 3668034, at *3 (declining to consider enhanced damages where plaintiff did not specifically request them). Here, Plaintiff does not seek enhanced damages, and the Court will not consider them.

willfulness of the infringement, (4) the conduct of the parties, and (5) the deterrent effect on the defendant." *Broadcast Music, Inc. v. Bar Next Door, LLC*, No. 24-02518-ABA, 2025 WL 2967228, at *3 (D. Md. Oct. 20, 2025) (citation omitted). "Courts have generally found statutory damages equal to approximately two or three times the amount a plaintiff would have received in licensing fees to be reasonable." *Id.* (collecting cases).

Plaintiff argues that "statutory damages in the amount of $10,000 per violation are sufficient to address the infringement" and is based on licensing fees. ECF 10, at ¶ 32. At the hearing, Ms. Caldwell testified to her experience in photography licensing as both an account executive at Getty Images and as the second in charge of the photography and digital media department at Warner Brothers/Discovery, where she licensed images for use on the company's website. She then testified as to how she calculated a value of $10,000 for each license—by using the Getty Images pricing calculator[5] and doubling the cost to account for the infringement, consistent with Getty Images' practice for copyright infringement. In multiplying this number by three, Plaintiff argues for an award of $30,000 in statutory damages.[6]

Considering Ms. Caldwell's experience and testimony establishing the factual basis for calculating the value of the licenses and infringement, the fact of the pre-existing relationship between Plaintiff and Defendant Florists' Review in considering willfulness, and this circuit's precedent in determining what statutory damages are reasonable, the

[5] The Getty Images price calculator is a free online tool used by photographers for pricing their images based on their use.

[6] As counsel emphasized during the hearing, "[t]his amount of statutory damages is roughly equivalent to the amount demanded in the Notice [sent to Ms. Gibson in July 2025], with an additional $5,000 of damages to deter [Defendants] from further infringement." ECF 10, at ¶ 34.

Court is satisfied that statutory damages of $10,000 per infringement are appropriate to compensate Plaintiff. Thus, the Court should award Plaintiff a total of $30,000 in statutory damages.

***B. The Undersigned recommends GRANTING Plaintiff's request for attorney's fees and costs.***

Plaintiff also seeks attorney's fees, pursuant to 17 U.S.C. § 505, based on Defendant's Copyright Act violation. Section 505 provides that "the court in its discretion may allow the recovery of full costs by or against any party. . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In support of this request, Plaintiff submitted a Verified Statement of Attorney's Fees and Costs in Support of Plaintiff's Motion for Default Judgment, signed by counsel in this case, Jan Berlage. ECF 10-8. Plaintiff also submitted statements from Mr. Berlage's firm and an expense report accounting for payments made to Mr. Berlage and previous counsel involved in the cease-and-desist efforts. ECF 10-6; ECF 10-7. Additionally, during the hearing, Plaintiff submitted to the Court an updated total for attorney's fees, which includes the time spent preparing for and at the hearing. Based on the information provided, the Court finds Plaintiff's attorney's fees of $9,215.50 to be reasonable. The Court is also satisfied that the enumerated costs are reasonable and attributable to the enforcement of Plaintiff's copyright claim.[7] Accordingly, I recommend Plaintiff be awarded attorney's fees and costs totaling $9,215.50.

---

[7] The accounting includes time spent by Mr. Berlage related to Ms. Gibson's bankruptcy proceedings. Because Ms. Gibson is a defendant to this action and her bankruptcy filing mentions this litigation, the Court finds that Mr. Berlage's time billed relating to investigating and informing the Court about the bankruptcy proceeding is attributable to the enforcement of the copyright action.

## VI. CONCLUSION

For the foregoing reasons, I recommend GRANTING Plaintiff's Motion for Default Judgment, awarding $30,000 in statutory damages, and awarding $9,215.50 in attorney's fees.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

Date: August 27, 2026

/s/
Charles D. Austin
United States Magistrate Judge